Smith, J.
This is an action by the plaintiffs seeking to sell the interest of defendant, Simpkinson, in a certain tract of real estate to pay a judgment rendered against him, which judgment is now owned by them, and to have a claim asserted by defendants, Goebel & Bettinger, as a lien on the same and prior to theirs held to be invalid as against them.
It is admitted that the real estate in question was owned in fee simple, at the time of her death, by Martha Simpkinson, who died intestate December 29, 1869, leaving surviving her the defendant, Henry H. Simpkinson, and three children, her only children and heirs at law — the two plaintiffs and their brother, John H. Simpkinson, Whether John H. Simpkinson is now living does not appear, but it is admitted that before the commencement of this suit he had sold and conveyed all of his interest in this real estate to Mrs. Ford, his sister, and that the two plaintiffs are the owners of the land in fee simple, subject only to the interest of their father (or of those claiming under him) therein, as the surviving husband of Mrs. Martha Simpkinson, their mother.
*269 John Kelly, the grandfather of the plaintiffs,held a claim against Henry H, Simpkinson, on which he brought a suit in Miami county common pleas court, which he assigned to his two grand-daughters, the plaintiffs, while the Buit was pending, and a judgment was recovered in said suit against defendant, Simpkinson, for the sum of $5,580.5.3, on which an execution was issued to the sheriff of Hamilton county, Ohio, and levied on the interest of Simpkinson in the land described, in the petition in this case. Prior to this, however, the defendants, Goebel & Bettinger. had, by confession, recovered a judgment against said Henry H. Simpkinson, in Miami county common pleas court, for $1,757.35 aud costs, and an execution issued thereon had also been levied by the sheriff of Hamilton county on his interest in said land.'
The claim of the plaintiffs is that they are entitled to have the interest of their father in this land sold for the payment of their said judgment, and that under the law the defendants, Goebel & Bettinger, have no claim or lien thereoD,and that it be so held and adjudged by the court, and that the said interest of Henry H. Simpkinson in this land be sold under the order of the court, and the proceeds be applied to the payment of their claitn, and for such other relief as in equity they are entitled to.
The claim of Goebel & Bettinger as set up in their answer is, that the execution issued on their said judgment was levied on the interest of H. H. Simpkinsonin this land, on December 30, 1897, and that the execution in the Kelly case was not levied until April, 1898, and that by virtue of the levy of their execution they have a good lien on the interest of Simpkinson therein, and one prior to that of the plaintiffs,and they, by cross-petition, ask for the sale thereof, and that this claim be first paid from the proceeds.
The court of common pleas by its decree ordered the interest of Simpkinson in the land to be sold, and that from the proceeds of sale, the costs be first paid, and that the residue be applied, first, to the payment of the claim of Goebel & Bettinger,and the balance to the claim of the plaintiffs, From this decree the plaintiffs appealed to this court. In this court Simpkinson filed an answer consenting to the sale of this interest in the property to pay the claim of Goebel & Bettinger.
*270 On this state of fact, what are the rights of these several parties in this case?
Mrs. Simpkinson, the wife of Henry H. Simpkinson, and the m'othér of the two plaintiffs, and their brother, having died intestate December 29, 1869, the real estate in question descended to her said three children subject to the interest of Henry H. Simpkinson therein, as by the provisions of either section 1 or section 2 of the statute of descents, passed March 4, 1865 (S. & S., 304),amending sections 1 and 3 of the act of March 14, 1853 (S. & C., 501), and by virtue of the provisions of section 17 of the last cited act, which provided that “nothing in this act should be so construed as to affect tbe right which any person may have to any estate by the curtesy or in dower in any estate of any deceased persons. And surviving husbands, whether there has been issue born during the coverture or not,should be entitled to the estates of their deceased wives by the curtesy.”
These provisibns of the statute being in force at the time of the death of Mrs. Simpkinson, if there were then no other provisions of law modifying or' changing the same, it seems clear thát thé surviving husband would have taken a life estate in this land, and would have had all the rights of a life tenant therein, including the right absolutely to convey the same to a third person, or to mortgage or encumber it for his debts, or to confess a judgment against himself, and that on proceedings to foreclose the1. mortgage, or enforce tbe judgment by execution or otherwise, his life estate therein might be sold under the order of the court,and the purchaser obtain a good title thereto.
But these were not the only statutes to be taken into consideration. On May 1, 1866, an act was passed and took Jfect (S. & S. 389), making real estate owned by a married voman, and acquired by her in any one of the ways therein specified, her separate property, and giving her certain rights therein, but providing that “this act shall not affect the estate by the curtesy of any husband in the real property of his wife after her decease; but during the life of the wife or any heir of her body such estate shall not be taken by any process of law for the payment of his debts, or be conveyed or encumbered by him, unless she shall join therein with him in the manner prescribed by law in regard to her own estate.”
*271 This section was slightly amended March 23, 1866 (S. & S., 391), but in no wise affecting this provision, and in the revision of the statutes in 1880 the law in question- was reenacted as section 3108, Revised Statutes. If, as between these parties, these laws a re still in force, it would seem to be clear that during the lifetime of the plaintiffs, two of the heirs of the body of Mrs. Simpkinson, this interest of the husband as life-tenant in this estate could not be taken by any process of law for the payment of his .debts, at least without the consent of the three children of Mrs. Simpkinson, or, it may be, the consent of those living who now have the estate in remainder, that is, of Mrs. Cameron and Mrs. Ford.
But, as we understand it, the claim asserted on behalf of the defendants,Goebel & Bettinger, is this: That on April 14,1884, this section 3108 was so amended by new sections 3108 and 3108, Revised Statutes, as to repeal the limitation before that time imposed upon him; that during the life of an' heir of the body of the wife his interest in her estate as tenant by this curtesy should not be taken by any process of law for the payment of his debts, or be conveyed or encumbered by him unless the wife should have joined therein with him in the manner prescribed by law in regard to her own estate (81 O. L., 209), and that this legislation had the effect immediately to confer upon Mr. Simpkinson the same rights as other life tenants have in real estate, and to’mortgage or convey the same, and to encumber it by judgment liens, and from that time forward it was liable to sale on execution or otherwise, even during the lifetime of any heir of the body of Mrs: Simpkinson; and if the statute in question was a valid one as to these parties, as applied to their respective interests and estate in this land, the contention would seem to be right unless the law as affecting them has been changed by subsequent legislation.
There have been substantial changes in the statutes on this subject since that of April 14, 1884.. At the very session of the legislature, section 3108, Revised Statutes,as amended April 14,-1884, was repealed, and re-enacted with the same limitation upon the rights and powers of a tenant by the curtesy as had existed when the husband had acquired *272 his intereft at the death of his wife under the law of 1861, and as amended in 1866, and by section 3108, Revised Statutes, as brought into the revision of 1880. This act is found in 82 O. L., 131, and continued in force until Ma rch 19, 1887, when an act was passed (84 O L., 136), section 4194-1, Revised Statutes, abolishing the estate by the curtesy, but saving vested rights, and in lieu thereof giving to a widower, as dower, one-third of his wife’s land for his life.
But manifestly this last statute does not affect the rights of the parties in this case for the reason that it dos not purport to do so, as it saves all vested rights, and for the additional reason that the legislature would not have the right to reduce a vested life estate to a tenant by the cu.rtesy in the whole land to'a dower interest off one-third thereof. And for the last reason stated, we are of the opinion that if the statute of April 14, 1884, was a valid statute as to these parties, and gave to Simpkinson, the tenant by curtesy, the right to convey, mortgage and encumber this interest in this real estate by repealing the restrictions and limitations on his right to do so imposed by the statute in force when he acquired his title thereto, that the legislature had not the right by the statutes of 1885 to reimpose such limitations upon him, and upon the right to use his said estate.
On this point then the question seems to be this: The husband and the children, the heirs at law of Mrs. Simpkinson, having acquired their several interests in this land on the death of the wife in 1869, his interest under the law then in force being that of a tenant by the curtesy having an estate for his life in said lands, but without any right to convey or encumber them during the life of any of her surviving children, and with an express provision of a statute in force that hie interest therein should not be taken by any process of law for the payment of his debts, could the legislature, without infringing upon the vested rights of the children, remove all those restrictions and authorize him thereby to convey or encumber his interests therein, and allow it to be sold for his debts during the lifetime of any of those children ?
The question is one not free from doubt. Indeed we are referred by counsel for the defendants to the decision of this court directly holding, in a somewhat similar case, that this *273 statute of 1884 was not open to the objection named It is Hulick v. Higdon, 1 C. C. Rep., 322. It there appears that the court deciding it was composed of Judges Cox, Smith and Swing. This is an error as Judge Bradbury took the place of Judge Swing, who had been of counsel in the case. Personally I have but an indistinct recollection of the CjS6 or of the arguments of counsel, but on reconsideration of the question I am of the opinion that that case was not correctly decided; that the rights of the parties were fixed by the laws in force when their interests were acquired, and were, therefore, vested rights, and could not be interfered with by the legislature. There can be no ■question, I think, but that on the death of the mother the three children took the whole title to the estate which had been held by her, subject only to the right given by the existing law to their father, and that certainly was not an absolute life estate therein; but on the contrary,by the statutes referred to, was shorn of many of the attributes and privileges of a tenant by the curtesy as it existed at common law, on the death of the wife, and as it existed in this state by statute prior to the passage of the law of 1861. At the death of the wife in 1869, the husband and the children together owned the whole estate — the husband an estate for his life therein, as fixed and limited by the statute, and the children the residue of the estate,subject only to his rights.
On what principle, then, the legislature could afterwards provide that his rights therein could be greatly extended, and the interest of the children correspondingly lessened, and this be effective as against them, I can not understand, in view of the provisions of section 28, article 2, of the constitution of the state which provides that “the general assembly shall have no power to pass retroactive laws. ’ ’ And as held by Judge Brinkerhoff in deciding Rairden v. Burnett, 15 Ohio St., 207,“the words‘retrospective’and ‘retroactive’as applied to laws, seem to be synonymous, “and he quotes approvingly Judge Story’s definition of a retrospective law: “Upon principle, every statute which takes away or impairs vested rights, acquired under existing laws,, or creates a new obligation, imposes a new duty or attaches a new disability in respect to transactions or considerations already past, must be deemed retrospective”,and therefore, under the clear doctrine *274 of the law “statutes affecting substantial interests and rights of property have a prospective operation only-, unless the contrary intention is clearly expressed. ” Kelley v. Kelso & Loomis, 5 Ohio St., 199.
Such should be the holding as to this statute of 1884, for it certainly seems to come within the meaning of retroactive law, as defined by Judge Story. The statute in force at the time he acquired his title, simply gave to the husband during the time that any one of the heirs of the body of the wife was living,the right to use and occupy the estate during his life (by himself or his agent we suppose), and expressly deprived him of any right to convey or encumber it during the life of the wife, unless she joined in the deed, and expressly exempted his interest therein from sale on execution or otherwise for his debts, either before or after the death of the wife, while any of said heirs were living, unless the wife had so joined in tho mortgage or other encumbrance. It is expressly held in Robert v. Sliffe, 41 Ohio St., 225, that the living children,after the death of the wife, have the right to prevent the enforcement of a mortgage made by the father after the death of the wife, which shows, we think,that they had substantial rights which would be protected by the courts, and which were so vested that they could not be divested by the legislature.
If these views be correct, and the claim of the defendants, Goebel & Bettinger, could not be asserted and enforced in an action brought by them directly to do so, against the wishes of the children,can it be done where,as in this case, an action is brought by the two children now owning the remainder, and where they seek the sale on a debt of the father now owned by them? And under the circumstances of this case, have the plaintiffs, the sole owners of the remainder, the right to have the father’s interest sold to pay the judgment lien thereon ? As to the last question, we have had doubt whether it can be done without the consent of John H. Simpkinson, one of the children of Mrs, Simpkinson, if he .is now living. But as this provision as to sale or encumbrance by the husband, for preventing the property being taken for the debts of the husband during the life of any child, was probably for the protection of the remainder of the estate, it may be that the consent of one who has *275 parted with his interest in the estate is not essential, but we think it would be the safer plan to have.such consent. If given, we see no reason why (as this provision of the law is one for the protection of the children or remainder men) they could not waive it, Nor do we see any good reason for holding that they may, and do, waive it as to their own claim, and ask for a sale of their father’s interest in the land to pay it; that this also would operate as a waiver of their right to object to the sale thereof to pay the claim of Goebel & Bettinger.
J. J. Glidden and C. & M. Swing, for Plaintiffs.
Jacob Shroder, for Defendants.
But it is clear, we think, that the court ought not to take any action that would be prejudicial to the ights of the lattei;. Their lien, by the levy of their execution before the levy of that of the plaintiffs, in some sense gave them a lien on the freehold' estate of Simpkinson. It attached at the date of the levy, and gave them the right to sell the life estate if he survived his children. This is a substantial right and should not be taken away. The only way in which the rights of all the parties can be protected, as it seems to us, would be to have the interest of Mr. Simpkinson sold on the claim of the plaintiffs, and the proceeds of the sale, less the costs of the case, placed in the hands of a trustee for investment during the lifetime of Simpkinson, the net proceeds of the income thereof to be paid to the plaintiffs during the lifetime of the father and of the plaintiffs, or either of them, and if the father should survive the children then the defendants, Goebel & Bettinger, would be entitled to the amount of the purchase money, less the costs as aforesaid.